UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JOHN KERR and KRYSTLE ENGLEHART,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>ST. ANTON BUILDING, LP, a California limited partnership; ST. ANTON MULTIFAMILY MANAGEMENT, INC.; and DOES 1 through 25, inclusive,<br><br>　　　　Defendants and<br>　　　　Third-Party<br>　　　　Plaintiffs, | CIV. NO. 2:16-414 WBS AC<br><br>MEMORANDUM AND ORDER RE: MOTION FOR PARTIAL DISMISSAL OF FIRST AMENDED THIRD-PARTY COMPLAINT |
| 　v.<br><br>THYSSENKRUPP ELEVATOR CORPORATION, and ROES 1 through 25, inclusive,<br><br>　　　　Third-Party<br>　　　　Defendant. | |

1

----oo0oo----

Plaintiffs John Kerr and Krystle Englehart (collectively "plaintiffs") filed this case against defendants St. Anton Building, LP ("SAB") and St. Anton Multifamily Management, Inc. ("SAMM"), alleging physical and emotional injuries and civil rights violations from the frequent outage of the sole elevator in the apartment building they occupied. (Pls.' Compl. ¶¶ 4, 16, 55, 85, 130 (Docket No. 1).)  Plaintiffs allege that SAB and SAMM, which own and operate the St. Anton Building ("the Building"), negligently maintained the Building's elevator and failed to provide Kerr, who relies on an electric wheelchair, reasonable accommodation and access to his third-floor apartment when the elevator was down. (Id. ¶¶ 63, 107.) SAB and SAMM filed a third-party complaint against ThyssenKrupp Elevator Corporation ("TKEC"), which furnished, installed, and maintained the elevator, seeking indemnification for liability arising from the elevator's outages. (Third-Party Compl. ¶¶ 15, 52 (Docket No. 8).)  TKEC now moves to partially dismiss SAB and SAMM's third-party claims against it.

I.    Factual and Procedural History

In 2004, TKEC entered into a Subcontract Agreement ("Subcontract") with SAB and SAMM[1] to furnish and install an

---

[1]  The parties dispute whether SAMM, which was not expressly named in either the Subcontract or Platinum Maintenance Agreement, has standing to join SAB's contractual claims against TKEC. (TKEC's Mem. of P. & A. in Supp. of Mot. for Partial Dismissal at 2.)  Because both claims are dismissible, the court need not reach the issue of whether SAMM was an intended beneficiary of the agreements.  For ease of discussion, the court will assume, without deciding, that SAMM is an intended beneficiary of all agreements between TKEC and SAB in this case.

elevator in the Building. (TKEC's Mot. to Dismiss Ex. A, Subcontract Agreement ("Subcontract") at 1, 9 (Docket No. 21-3).)[2] The Building was built with no first-floor apartments, and the elevator TKEC installed was to be the only elevator available for tenants to use. (Pls.' Compl. ¶ 16.) The Building was completed around 2006, at which time SAB and SAMM began leasing units in the Building to residents. (Id. ¶ 14.)

At that time, Kerr moved into a third-floor apartment in the Building with his wife, Englehart. (Id. ¶ 16.) Plaintiffs allege that upon moving into the Building and whenever a new building manager was assigned, they would contact SAB and SAMM to make the new manager aware of Kerr's disability. (Id. ¶ 18.) Plaintiffs would also request notice from management of elevator outages, as Kerr is unable to access or leave the third floor when the elevator is down. (Id.)

In 2012, SAB and SAMM entered into a Platinum Maintenance Agreement ("PMA") with TKEC to have TKEC maintain the Building's elevator. (TKEC's Mot. to Dismiss Ex. B, Platinum Maintenance Agreement ("PMA") at 2, 5 (Docket No. 21-4).) The PMA stated that TKEC would service the elevator on a regularly

---

[2] As the exhibits TKEC submitted are either matters of public record or relied upon in SAB and SAMM's amended third-party complaint, the court takes judicial notice of the exhibits pursuant to Federal Rule of Evidence 201(b). See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (a court may take judicial notice of matters of public record); Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."), superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 681–82 (9th Cir. 2006).

scheduled basis, respond to repair requests, and provide replacements for certain worn parts. (Id. at 5.)

In 2015, the elevator allegedly experienced frequent outages. (Pls.' Compl. ¶ 19.) Kerr alleges that as a result of the outages, he was unable to access or leave his apartment for hours or days at times. (Id. ¶¶ 27, 39, 41-45.) On one occasion, the elevator was down for four days. (Id. ¶ 39.) Plaintiffs allege that SAB and SAMM would often fail to notify them of outages and repairs, (id. ¶ 21), and would respond to their requests for accommodation by telling them to pay for a hotel, sleep in the first-floor mailroom, or have the fire department carry Kerr up to his apartment, (id. ¶¶ 22, 42, 52). Plaintiffs claim that as a result of the elevator outages and SAB and SAMM's refusal to provide Kerr reasonable accommodations, Kerr was forced to pay for hotel stays, denied access to his medication, forced to miss work, and sent to an emergency room on one occasion due to starvation and dehydration. (Id. ¶¶ 26, 31, 42, 44, 57.) Plaintiffs moved out of the Building in early 2016. (Id. ¶¶ 57-58.) They filed suit against SAB and SAMM on February 5, 2016, seeking damages for physical and emotional injuries and civil rights violations.[3] (Id. at 13-26.)

On May 13, 2016, SAB and SAMM filed a third-party complaint against TKEC, (Third-Party Compl. at 11), and amended

---

[3] Englehart seeks damages for "severe mental anguish" and missed work time due to having to take care of Kerr while he was shut out of his apartment. (Pls.' Compl. ¶ 38.) She also seeks damages for anxiety and resulting physical pain from fear that the Building's elevator would shut down while she was in it. (Id. ¶ 49.)

4

their third-party complaint as a matter of course on July 18, 2016, (First Am. Third-Party Compl. at 11 (Docket No. 19)).  The third-party complaint incorporated the factual allegations set forth in plaintiffs' Complaint, (id. ¶ 7), alleging that TKEC was completely liable for any injuries plaintiffs suffered, (id. ¶ 38).  In support of their amended third-party complaint, SAB and SAMM cite to provisions in the Subcontract and PMA that purport to require TKEC to indemnify them.  (Id. ¶¶ 27, 35.)  In light of TKEC's refusal to comply, SAB and SAMM seek a declaratory judgment with respect to three claims against TKEC: (1) breach of the Subcontract, (2) breach of the PMA, and (3) common law equitable indemnity.[4]  (Id. at 4-6.)  TKEC now moves to dismiss all claims, save for SAMM's equitable indemnity claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (TKEC's Mot. to Dismiss, Notice of Dismissal at 1-2 (Docket No. 21).)

II.  Legal Standard

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of

---

[4] In its amended third-party complaint, SAB and SAMM style their equitable indemnity claim as three separate causes of action: "equitable indemnity," "comparative indemnity," and "contribution."  (First Am. Third-Party Compl. at 4-6.)  Under California law, the three causes of action are one and the same. See Am. Motorcycle Assn. v. Superior Court, 20 Cal. 3d 578, 584, 596, 598 (1978) (explaining that "comparative indemnity . . . is simply an evolutionary development of the common law equitable indemnity doctrine" wherein concurrent tortfeasors may obtain partial indemnity from other tortfeasors; referring to "contribution" as "partial indemnification").  SAB and SAMM do not appear to dispute this categorization.  (See SAB & SAMM's Opp'n at i (condensing equitable indemnity, comparative indemnity, and contribution responses under one subheading).)

the third-party plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a plaintiff pleads facts that are "merely consistent with a defendant's liability," the facts "stop[] short of the line between possibility and plausibility."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).  "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense."  Id. at 663-64 (citing Twombly, 550 U.S. at 556).

III. SAB and SAMM's Indemnity Claims

    A.    SAB and SAMM Fail to Allege Facts Sufficient to State a Plausible Claim for Breach of the Subcontract

Under California law, "a cause of action for breach of contract requires a pleading of (1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom."  Acoustics, Inc. v. Trepte Constr. Co., 14 Cal. App. 3d 887, 913 (2d Dist. 1971).  Whether a party breached a contract may depend on how the contract is interpreted.  See, e.g., Morey v. Vannucci, 64 Cal. App. 4th 904, 913 (1st Dist. 1998) ("In order to prevail on their claim that Bay Cities breached the trucking agreement . . .

1  appellants were required to prove by a preponderance of the
2  evidence that the term 'affiliated entities' in the option
3  provision meant only Bay Cities itself or a wholly owned or
4  controlled corporate subsidiary . . . ."). "The interpretation
5  of a contract is a judicial function." Wolf v. Walt Disney
6  Pictures & Television, 162 Cal. App. 4th 1107, 1125 (2008)
7  (citing Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging
8  Co., 69 Cal. 2d 33, 39-40 (1968)), as modified on denial of reh'g
9  (June 4, 2008). "When a contract is reduced to writing, the
10 intention of the parties is to be ascertained from the writing
11 alone, if possible . . . ." Cal. Civ. Code § 1639. "The
12 language of a contract is to govern its interpretation, if the
13 language is clear and explicit, and does not involve an
14 absurdity." Cal. Civ. Code § 1638. "An indemnity agreement is
15 to be construed like any other contract . . . ." Leo F. Piazza
16 Paving Co., 128 Cal. App. 3d at 591.

17         With respect to the Subcontract, the parties have not
18 disputed the existence of the agreement, SAB and SAMM's
19 performance or excused non-performance, or damages.  They focus
20 their disagreement, instead, on whether TKEC breached an
21 indemnity clause within the Subcontract.  (TKEC's Mot. to
22 Dismiss, Mem. of P. & A. in Supp. of Mot. for Partial Dismissal
23 ("TKEC's Mem. of P. & A.") at 9-10 (Docket No. 21-1).)  The
24 indemnity clause states, in relevant part:

25         [TKEC] shall indemnify and save harmless [SAB] . . .
           from any and all claims, demands, causes of action,
26         damages, costs, expenses, actual attorneys' fees,
           losses or liability, in law or in equity, of every
27         kind and nature whatsoever ("Claims") arising out of
           or in connection with [TKEC's] operations to be
28

                                    7

performed under this Agreement . . . .
(Subcontract at 5.)  The "operations" required of TKEC under the Subcontract is the furnishing and installing of an elevator in the Building.  (See id. at 9 ("This Agreement is intended to cover the complete furnishing and installation of: ONE (1) HOLELESS ISIS I PASSENGER ELEVATOR").)  The Subcontract's indemnity clause, therefore, applies only to claims arising from TKEC's furnishing and installing of the Building's elevator.

      Two other provisions narrow TKEC's indemnity obligation under the Subcontract.  The first, contained within an amendment to the Subcontract, states that TKEC's obligation to indemnify "is limited solely to losses to the extent caused by [TKEC's] acts, actions, omissions or neglects and in no way [includes] the acts, actions, omissions or neglects of Contractor, Owner, Architect, other subcontractors, or others."  (Id. at 16.)  The second, contained within a 2010 class action settlement agreement which SAB and SAMM were parties to, (see TKEC's Mot. to Dismiss Ex. D, Haigh Decl. at 2, 4 (Docket No. 21-6)), releases TKEC from all liability arising from the design, manufacture, and installation of the model of elevator that SAB and SAMM purchased, excluding "claims for bodily injury," (TKEC's Mot. to Dismiss Ex. C, Am. Stipulated and Settlement Agreement ("Settlement Agreement") at 7 (Docket No. 21-5).)

      In short, TKEC's present indemnity obligation under the Subcontract extends only to claims "arising out of or in connection with" its negligent furnishing or installing of the Building's elevator that results in bodily injury.

      The parties disagree about whether such obligation

1  extends to the present situation, where plaintiffs have alleged
2  bodily injury arising from the elevator's frequent non-operation
3  eleven years after it was installed.  (TKEC's Mem. of P. & A. at
4  4 ("[Plaintiffs'] claims have nothing whatsoever to do with
5  TKEC's 2004 installation work--and everything to do with their
6  alleged mistreatment at the hands of SAB/SAMM 11 years later in
7  2015."); SAB & SAMM's Opp'n at 6 ("ThyssenKrupp's argument, that
8  Plaintiffs must have been injured during the 2004 installation of
9  the elevator for the indemnity agreement to apply, unreasonably
10 restricts the term, 'arising out of or in connection with' . . .
11 .") (Docket No. 22).)

12          To plead negligence under California law, a plaintiff
13 must allege facts plausibly showing duty, breach, causation, and
14 damages.  See Conroy v. Regents of Univ. of Cal., 45 Cal. 4th
15 1244, 1250 (2009).  The element of causation requires pleading
16 that the defendant's act or omission was the "cause in fact" of
17 the plaintiff's injury.  State Dep't of State Hosps. v. Superior
18 Court, 61 Cal. 4th 339, 352 (2015), reh'g denied (July 22, 2015).
19 California has adopted the "substantial factor" test for cause in
20 fact determinations.  Viner v. Sweet, 30 Cal. 4th 1232, 1239
21 (2003).  Under that test, a defendant's conduct is a cause of a
22 plaintiff's injury if: (1) the plaintiff would not have suffered
23 the injury but for the defendant's conduct, or (2) the
24 defendant's conduct was one of multiple causes sufficient to
25 cause the alleged harm.  Rutherford v. Owens-Illinois, Inc., 16
26 Cal. 4th 953, 969 (1997) ("The substantial factor standard . . .
27 subsumes the 'but for' test while reaching beyond it to
28 satisfactorily address other situations, such as those involving

independent or concurrent causes in fact."), as modified on denial of reh'g (Oct. 22, 1997); Mitchell v. Gonzales, 54 Cal. 3d 1041, 1049 (1991) (stating that the 'but for' test "should not be used when two causes concur to bring about an event and either one of them operating alone could have been sufficient to cause the result" (internal quotation marks and citation omitted)).

The facts in SAB and SAMM's third-party complaint fail to set forth a plausible claim that TKEC's furnishing and installing of the Building's elevator was a substantial factor in causing plaintiffs' injuries. Incorporating plaintiffs' Complaint, SAB and SAMM merely allege that the elevator experienced frequent outages in 2015 and was down "approximately eighty to one hundred" times over the course of plaintiffs' ten-year stay at the Building.[5] (Pls.' Compl. ¶ 19.) They do not include any facts about how TKEC was negligent when it installed the elevator. Without any allegation of the specifics of how TKEC might have been negligent, whether the elevator was misused, or whether the number of outages cited over a ten-year span is abnormally high, the court cannot see how such outages are not consistent with wear and tear of the elevator through tenant use and occasional misuse. (Cf. Subcontract at 11 (providing just a one-year warranty).) In an apartment building consisting of

---

[5] In their amended third-party complaint, SAB and SAMM state that "in the year 2015 'there were approximately eighty to one hundred elevator outages.'" (First Am. Third-Party Compl. ¶ 17.) The court assumes this was a mistake, as plaintiffs allege that "[d]uring Plaintiffs [sic] time living in the Building, there were approximately eighty to one hundred elevator outages." (Pls.' Compl. ¶ 19.) SAB and SAMM correct this mistake in their Opposition. (SAB & SAMM's Opp'n at 1.)

sixty-five apartments and one elevator, (First Am. Third-Party Compl. ¶ 8; Pls.' Compl. ¶ 16), tenant use and occasional misuse of the elevator is an obvious alternative explanation for the elevator's slowing down a noticeable extent over time.

Where an obvious alternative explanation exists for the elevator's outages, it cannot be said that SAB and SAMM have pled facts sufficient to set forth a plausible claim that TKEC's performance of its Subcontract obligations was a substantial cause of the outages. See Iqbal, 556 U.S. at 682 (where "obvious alternative explanation" exists for alleged facts, plaintiff has not pled plausible claim). As such, SAB and SAMM have failed to state a claim for breach of the Subcontract's indemnity provision via allegations of negligence. Accordingly, the court must grant TKEC's motion to dismiss SAB and SAMM's breach of the Subcontract claim.

### B. SAB and SAMM Fail to Allege Facts Sufficient to State a Plausible Claim for Breach of the PMA

As discussed above, a cause of action for breach of contract under California law "requires a pleading of (1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom." Acoustics, 14 Cal. App. 3d at 913. As in the case of the Subcontract, the parties do not dispute the existence of the PMA or SAB and SAMM's performance or excused non-performance of it. They focus their disagreement, instead, on whether TKEC breached the PMA's service and insurance provisions and whether the alleged breaches caused damage to SAB and SAMM. (See TKEC's Mem. of P. & A. at 8.) Because the issue of breach is

dispositive, the court need not address the issue of damages.

With respect to their breach of service claim, SAB and SAMM allege that the PMA required TKEC to "service and maintain the SAB elevator to increase elevator performance and decrease downtime by using a 'team of engineers and field support experts' that were available 'around the clock.'" (First Am. Third-Party Compl. ¶ 23.) To the extent SAB and SAMM allege that the PMA required TKEC to <u>actually</u> increase elevator performance and decrease downtime, that claim is based on a misreading of the PMA. The PMA provision in question states: "To help increase elevator performance and decrease downtime, our technicians utilize the latest industry methods and technology . . . [and] are supported around the clock by a team of engineers and field support experts." (PMA at 2.) A plain reading of the provision shows that TKEC did not guarantee to actually increase elevator performance or decrease downtime. Nor did TKEC guarantee that repairs would be completed within a certain amount of time. Instead, all the provision requires is that TKEC use "the latest industry methods and technology" while supporting their technicians "around the clock" with experts and engineers. SAB and SAMM do not allege that TKEC failed to meet these obligations. Accordingly, SAB and SAMM have not stated a claim that TKEC breached its service obligations under the PMA.

With respect to SAB and SAMM's claim that TKEC breached an indemnity obligation under the PMA, the parties go to great lengths to dispute the scope and applicability of the PMA's "Insurance" clause. One point of dispute is whether the clause requires SAB and SAMM to seek indemnity from TKEC's insurer, as

opposed to SAB and SAMM directly.  (See TKEC's Reply at 7-8.)
The clause states, in relevant part:

> ThyssenKrupp Elevator agrees to name St. Anton Building LP as additional insured. As additional insured, St. Anton Building LP will be defended and indemnified for actions arising from ThyssenKrupp Elevator's acts, actions omissions or neglects; but will not be defended or indemnified for St. Anton Building LP's own acts, actions, omissions or neglects.

(PMA at 7.)  While the clause states that SAB and SAMM "will be defended and indemnified for actions arising from [TKEC's] acts, actions omissions or neglects," it does not expressly state who is obligated to defend and indemnify.

Under California law, "[t]he interpretation of a contract is a judicial function." Wolf, 162 Cal. App. 4th at 1125 (citing Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 39-40 (1968)).  "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ."  Cal. Civ. Code § 1639.  "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."  Cal. Civ. Code § 1638.  Here, the court finds the qualifier "[a]s additional insured[s]" to be instructive.  That phrase defines SAB and SAMM's indemnity rights as those stemming from their status "[a]s additional insured."  The immediately preceding statement that "[TKEC] agrees to name [SAB] as additional insured" further confirms that the indemnity rights being discussed here are those stemming from insured status, not direct indemnification.  Because SAB and SAMM cannot point to any other provision of the PMA that requires direct

13

indemnity from TKEC, the court must grant TKEC's motion to dismiss SAB and SAMM's claim that TKEC breached an indemnity obligation under the PMA.

### C. The PMA Preempts SAB's Equitable Indemnity Claim

Under California law, indemnity may be either "express indemnity," which refers to an express contract term providing for indemnification, or "equitable indemnity," which embraces traditional equitable indemnity and implied contractual indemnity. Prince v. Pac. Gas & Elec. Co., 45 Cal. 4th 1151, 1157-60 (2009) (reviewing the historical forms of indemnity under California law). Where "the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity." Rossmoor Sanitation, Inc. v. Pylon, Inc., 13 Cal. 3d 622, 628 (1975).

Here, the parties acknowledge that the PMA's "Insurance" clause governs TKEC's indemnity duty vis-à-vis SAB. (See First Am. Third-Party Compl. ¶ 11; TKEC's Mem. of P. & A. at 12.) The court is not aware of a California case holding that where one party contracts to indemnify another through its insurer, that party remains additionally liable under the doctrine of equitable indemnity.[6] Accordingly, the PMA's "Insurance" clause preempts SAB's equitable indemnity claim and

---

[6] A contrary reading would allow SAB to obtain indemnification twice: once from TKEC via equitable indemnity, and a second time from TKEC's insurer via the "Insurance" clause. Absent express contractual language indicating that was the intent of the parties, such a reading flies against the purpose, if not the express terms, of Rossmoor's holding, and the court is not aware of any precedent that requires its adoption.

the court must grant TKEC's motion to dismiss that claim.

IV. Conclusion

    IT IS THEREFORE ORDERED that:

(1) TKEC's motion to dismiss SAB's first, second, third, fourth, fifth, and sixth causes of action be, and the same hereby is, GRANTED; and

(2) TKEC's motion to dismiss SAMM's second and third causes of action be, and the same hereby is, GRANTED.

SAB and SAMM have twenty days from the date this Order is signed to file a second amended complaint, if they can do so consistent with this Order.

Dated: September 8, 2016

*[signature]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE